**United States Court of Appeals**
**for the Eighth Circuit**

Kenis Adalberto Lopez Gonzalez,

Plaintiff,

v.

Markwayne Mullin, *in his official capacity as Secretary of Homeland Security*; U.S. Department of Homeland Security; David Venturella, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; U.S. Immigration and Customs Enforcement; Todd Blanche, *in his official capacity as Attorney General of the United States*; Marco Rubio, *in his official capacity as Secretary of State*; and Sam Olson, *in his official capacity as Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*,

Defendants.

Appeal No. 26-3276

**Defendants' Motion for a Stay Pending Appeal and Immediate Administrative Stay**

**&**

**Request for Expedited Relief**

## Table of Contents

Introduction ........................................................................................ 3

Background ........................................................................................ 4

Legal Standard ........................................................................................ 6

Argument ........................................................................................ 7

I. This Court Should Grant a Brief Administrative Stay While It Considers This Motion. ........................................................ 7

II. Defendants Are Likely To Succeed on the Merits ...................... 8

A. The district court lacked jurisdiction to order Plaintiff's return to the United States as a remedy for the alleged violation of the OSUP regulation. ...................................... 8

B. To the extent the district court believed that the violation of OSUP regulations invalidated the removal order, such a claim is jurisdictionally barred by § 1252(b)(9) and (g), and further falls within the scope of the *D.V.D.* stay. ............................................................ 17

III. The Remaining Factors Favor a Stay........................................ 24

CONCLUSION ........................................................................................ 28

Certificate of Compliance ................................................................ 30

Certificate of Service ........................................................................ 31

## Introduction

The preliminary injunction in this immigration case is extraordinary, legally unwarranted, and imminently threatens irreparable harm to the United States, particularly in the realm of foreign relations. The district court's order rests on its own extra-record research and its skepticism of a diplomatic assurance provided by the Central African Republic, leading it to conclude that the government improperly executed a final order of removal.

The relief ordered is untethered to the purported violation. Specifically, the district court directed Defendants promptly to facilitate the return of a noncitizen plaintiff who was removed more than two months ago pursuant to a final order of removal. Yet the court justified that relief based on its finding that Defendants failed to comply with regulations governing the revocation of Plaintiff's supervised release. Ironically, the court's order requires Defendants to take Lopez into custody when he is not currently in custody, so that he may test the legality of his judicially created custody.

The injunction reflects a transparent effort to circumvent what the district court surely recognized were otherwise-insuperable barriers to

relief: a lack of jurisdiction to address Plaintiff's challenge to his third-country removal and the Supreme Court's stay of the class-wide judgment in *DHS v. D.V.D.*, No. 26-426, in which Plaintiff is a class member and which involves third-country-removal claims identical to Plaintiff's. For these reasons, and those discussed below, Defendants respectfully request that this Court immediately stay the district court's injunction.

## **Background**

The district court granted Plaintiff Kenis Adalberto Lopez Gonzalez's motion for preliminary injunction on October 30, 2026. R. Doc. 30. Lopez is a Nicaraguan national who has twice unlawfully entered the United States. After his second unlawful entry, an immigration judge entered an order of removal but granted Lopez withholding of removal to Nicaragua. ICE then released Lopez on an order of supervision ("OSUP") in 2024. In January 2026, ICE took Lopez back into custody in Minnesota for eventual removal to a third country, when ICE released Lopez upon his arrival in the Central African Republic ("CAR").

Lopez is currently out of ICE custody living in CAR. But, in October 2026, he filed a civil action alleging Defendants violated the

Administrative Procedure Act and his Fifth Amendment rights. R. Doc. 1. He sought a declaration that his removal to CAR violated Department of Homeland Security (DHS) regulations and the U.S. Constitution and that the revocation of his OSUP was in violation of DHS regulations. *Id.* at 36-37. He also sought an order requiring his return to Minnesota and, once there, an order directing DHS to reinstate his previous OSUP. *Id.*

After briefing and an expedited hearing on October 30, the district court granted Plaintiff's request for a preliminary injunction. The court ordered Defendants to facilitate Lopez's return to Minnesota and to revive his OSUP, which the court further ordered could not be revoked absent compliance with statutory and regulatory requirements, and enjoined Lopez's removal upon return. R. Doc. 30, at 29. The order set forth several deadlines, the first of which fell on November 4th. R. Doc. at 28.

On November 3, 2026, Defendants moved to stay the district court's order on several grounds. R. Doc. 32. Defendants asked for a ruling by November 4th in the form of a full stay or, in the alternative, a two-week administrative stay.

On November 9th, the district court denied Defendants' motion.[1]

Because Defendants are likely to prevail on appeal of the preliminary injunction order and because deadlines loom that would risk mooting Defendants' appeal of this significant issue, Defendants now seek an immediate administrative stay and a full stay pending appeal. *See* Fed. R. App. P. 8(a)(2). The district court has denied Defendants' motion for a stay pending appeal. R. Doc. 42; *see* Fed. R. App. P. 8(a)(1).

## **Legal Standard**

Courts consider four factors in determining whether a stay is appropriate: (1) whether the "stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) whether the movant "will be irreparably injured absent a stay"; (3) whether a stay "will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The

[1] Notwithstanding the district court's repeated statements that Defendants failed to dispute certain facts, *see, e.g.*, R. Doc. 42, at 4-9 nn.4-7, Defendants made no concessions before the district court.

Supreme Court has stated that first two factors "are the most critical." *Id.*

## <u>Argument</u>

### I. This Court Should Grant a Brief Administrative Stay While It Considers This Motion.

At the outset, the Court should grant an immediate administrative stay while considering whether to grant a stay pending appeal. The Ninth Circuit in *A.M.A.S. v. Mullin, et al.*, 26-6950, recently took this approach issuing an administrative stay, expediting briefing, and referring the full stay request to a merits panel. *See* DktEntry: 17.1.

A court of appeals may grant an administrative stay while it considers whether to grant a full stay pending appeal. *See, e.g.*, *United States v. Texas*, 144 S. Ct. 797, 798-99 (2024) (Barrett, J., concurring). This Court has done so in time-sensitive cases. *See, e.g.*, *Tincher v. Noem*, 2026 WL 160525 (8th Cir. Jan. 21, 2026); *Brady v. Nat'l Football League*, 638 F.3d 1004 (8th Cir. 2011). Administrative stays are often warranted when denying an administrative stay could result in mootness. *See* R. Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1961 (2022).

That risk is present here. If Plaintiff is returned to the United States while this motion remains pending, that would likely result in mootness, preventing the Court from determining the permissibility of the facilitation-of-return remedy ordered by the district court. In addition, the Court should grant an immediate administrative stay to prevent the government from incurring irreparable harms while this motion is briefed. The Court should accordingly immediately grant an administrative stay, in order "to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Brady*, 638 F.3d at 1005.

## II. Defendants Are Likely To Succeed on the Merits

### A. The district court lacked jurisdiction to order Plaintiff's return to the United States as a remedy for the alleged violation of the OSUP regulation.

The district court found that Lopez was likely to prevail on the merits with respect to his claim that Defendants violated the Fifth Amendment, the APA, and the *Accardi* doctrine[2] when they detained him in January 2026 purportedly without following the regulations and

[2] The *Accardi* doctrine holds that government agencies are legally bound to follow their own regulations, policies, and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

procedures attendant to revoking a noncitizen's OSUP. R. Doc. 30, at 21; R. Doc. 42, at 7-12. The district court cited 8 C.F.R. § 241.13, which allows Defendants to revoke a noncitizen's release where he violated his conditions or where changed circumstances make removal in the reasonably foreseeable future a "significant likelihood" after "notif[ication] of the reasons for revocation of his or her release." § 241.13(i)(2)-(3); *see* § 241.13(i)(3). As a purported remedy for Defendants' alleged violation of this regulation, the district court ordered the government to return Lopez to the United States from CAR, restore his previous release on an OSUP, and refrain from removing him again until after final judgment in this case.

Even if ICE failed to follow the procedures for revoking Lopez's permission to remain at large in the United States, undoing his removal and barring his removal in the future is not a permissible remedy for such a violation.[3] *See, e.g., Somvang P. v. Easterwood*, 26-cv-00037 (PJS-EMB), slip op. (D. Minn. Mar. 20, 2026) (denying habeas petition where

[3] Given the state of the record, whether ICE followed procedures was "unclear." Defs.' Response, R. Doc. 18, at 40 n.8.

DHS violated OSUP revocation regulations but proved that removal was significantly likely in the reasonably foreseeable future).

Defendants are likely to prevail on appeal for three reasons. *First*, Lopez has failed to show prejudice from any failure to follow OSUP procedures. *Second*, Lopez's removal (and, hence, release from custody) mooted any failure to follow the proper procedures to revoke his OSUP. And *third*, even assuming a prejudicial violation of the OSUP regulatory procedures, that violation was solely in the past, and it gives no justification for the prospective remedy of ordering Lopez's return to the United States.

### 1. Lopez failed to show prejudice.

Whether an injury is redressable depends on the "relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 660 (2021) (citation omitted). Plaintiff here cannot show any prejudice. And even if he could, there is no relationship between the injury suffered and the relief he requests.

Under this Court's precedent, a noncitizen may be entitled to relief where he establishes that "the regulation in question serves a purpose of benefit" to him and that "the violation prejudiced interests of the alien

which were protected by the regulation." *Puc-Ruiz v. Holder*, 629 F.3d 771, 780 (8th Cir. 2010) (citations omitted). The critical question, therefore, is not whether Defendants complied with every procedural requirement of § 241.13, but whether any alleged failure to do so prejudiced an interest that the regulation was designed to protect.[4]

Crucially here, Plaintiff's detention was governed by 8 U.S.C. § 1231 because he has a final order of removal. Plaintiff was ordered removed in August 2024 and, at that time, was granted withholding of removal to Nicaragua and released from ICE custody under an OSUP. R. Doc. 30, at 3. Pursuant to the OSUP, Plaintiff was not detained until his arrest in January 2026. *Id.*

Section 241.13(i) regulates when DHS may revoke an OSUP and re-detain a noncitizen whose removal is significantly likely in the reasonably foreseeable future. The purpose of those procedures is to protect against unnecessary or prolonged detention when removal is not

[4] The Tenth Circuit held that failure to abide by the § 241.13(i) regulations is per se prejudicial, warranting habeas relief. *Abedi v. Carter*, No. 25-3179, ___ F.4th ___, 2026 WL 3149141, at *21 (10th Cir. Oct. 21, 2026). But the Plaintiff in *Abedi* had not been removed and remained in ICE custody. Thus, the injury—ongoing detention—was redressable through habeas. The same cannot be said here.

realistically forthcoming. 8 C.F.R. § 241.13(i); *see also Zadvydas v. Davis*, 533 U.S. 678 (2001). The regulation does not confer a substantive right to remain in the United States, nor does it condition the validity of a later removal on compliance with the revocation procedures. Indeed, § 241.13(i) has no work to do once removal is effectuated.

The district court misunderstood this framework and the role § 241.13 plays. The district court questioned whether Defendants possessed a sufficiently developed removal plan at the time of Plaintiff's detention to justify the conclusion his removal was sufficiently foreseeable. R. Doc. 30, 24. Even if the district court's suspicions were well-taken (and they were not), such failure to provide an adequate justification for revoking Plaintiff's OSUP does not justify the relief the court ordered because Plaintiff's removal was simply not influenced by the revocation of his OSUP. "Undoing" the removal because of purported problems in the revocation of Plaintiff's OSUP simply does not make sense and bears no nexus to the alleged injury.

In any event, the district court's evaluation of likelihood of removal was incorrect. The district court found that Defendants lacked a plan to remove Plaintiff. R. Doc. 30, at 24. That finding is belied by the fact he

*was in fact* removed to CAR. And while his removal took approximately 7.5 months rather than six or less, the Supreme Court's decision in *Zadvydas* does not prohibit detention past six months. On the contrary, it allows the noncitizen to seek a hearing about the significant likelihood of removal in the foreseeable future at six months.[5] 533 U.S. at 701.

The district court's reliance on the concept of significant likelihood of removal in the foreseeable future also runs afoul of the principle that "*Zadvydas* should not be expanded beyond the context of the *indefinite and potentially permanent* detention involved there." *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (quotation omitted) (emphasis provided by *Castaneda* court)). This case did not involve permanent detention; it involved a limited period of detention tied to the execution of a final removal order. As a result, the district court's reliance on Defendants' alleged failure to make requisite significant-likelihood-of-removal-in-the-foreseeable-future findings pursuant to § 241.13(i) cannot support the

---

[5] Plaintiff filed a habeas petition while detained in the Western District of Louisiana, which was pending at the time of his removal. *See Lopez v. Mullin*, No. 3:26-CV-1049 (TAD/CBW) (W.D. La. 2026). According to the district court's order here, that matter remained pending until early October 2026, when the court granted Lopez's motion to dismiss without prejudice. R. Doc. 30, at 8 n.2.

broad remedy it imposed—a remedy untethered to the purposes of the regulation alleged to have been violated in the first place.

### 2. Any violation of OSUP regulations became moot when Lopez was removed from the United States.

Article III requires a "case or controversy" at all stages of proceedings. *Spencer v. Kemna,* 523 U.S. 1, 7 (1998). Mootness occurs when "changed circumstances already provide the requested relief and eliminate the need for court action." *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004). There is no need for court action on Plaintiff's challenge to ICE's compliance with procedures that govern revocation of his OSUP because he no longer remains in Defendants' custody.

OSUP regulations govern the conditions on which an alien is permitted to remain free from detention within the United States. Plaintiff is no longer in Defendants' custody, and no order adjudicating the legality of his prior detention can alter his current status in CAR. The only relief that arguably remedies a violation of § 241.13(i) is release from custody pursuant to a habeas petition. Indeed, many courts addressing failures to comply with those procedures have ordered release, *see Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal.

Oct. 22, 2025) (collecting cases)—but certainly not the invalidation of a completed removal or the return of a removed noncitizen to the United States, release from custody, *and* an injunction on future removal. That is because a noncitizen's re-detention does not "affect potentially the outcome of [his] deportation proceeding." *Puc-Ruiz*, 629 F.3d at 780 (citations omitted). The injury is simply not redressable here because Lopez is no longer in Defendants' custody.

Article III does not permit the district court to create a case or controversy where none exists. The irony of the preliminary injunction here is that it requires Defendants to take someone into custody who is not currently in custody, so that the legality of that judicially created custody can then be reviewed.

In short, the district court's remedy bears no relationship to the injury allegedly caused by the regulatory or constitutional violation. Even if Defendants failed to comply with § 241.13(i) and even if Plaintiff lacked sufficient notice, Plaintiff has not shown—and the district court did not find—that compliance with those procedures would have prevented his ultimate removal, altered the outcome of his immigration proceedings, which had already concluded, or otherwise entitled him to

remain in the United States where a final removal order was in place and a third country consented to receiving him under diplomatic assurances that he would not be persecuted or tortured. Nor does ordering Plaintiff's return redress the injury from his *past, now-concluded* detention. Without such a showing, Plaintiff cannot establish the nexus and prejudice required by this Court in *Puc-Ruiz*.

**3. The facilitation-of-return remedy the district court ordered is prospective relief that cannot be ordered to remedy a past violation.**

Prospective relief cannot be ordered to remedy a claimed violation that rests solely in the past. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-07, 111-13 (1983). As explained, Plaintiff has been removed, meaning that any failure to follow the OSUP regulations when detaining him lacks any prospective effect. Regulations governing the terms on which an alien may remain free from detention in the United States while awaiting removal have no implications for an alien who has already been removed, and a past violation of those regulations has no continuing future effect. Nor should any court presume that any past violation for the OSUP regulations means Defendants will violate them again. *Cf. McDonough v. Anoka Cnty.*, 799 F.3d 931, 948 (8th Cir. 2015) (applying

the "presumption of regularity," and explaining "'in the absence of clear evidence to the contrary,' courts presume that public officers 'have properly discharged their official duties.'") (quoting *United States v. Armstrong,* 517 U.S. 456, 464 (1996)). This is especially true given Plaintiff was in fact removed; removal was thus necessarily sufficiently imminent. Accordingly, Plaintiff is not entitled to a prospective remedy for what is at most a past regulatory violation, and the mismatch between claimed violation and remedy is fatal.

### B. To the extent the district court believed that the violation of OSUP regulations invalidated the removal order, such a claim is jurisdictionally barred by § 1252(b)(9) and (g), and further falls within the scope of the *D.V.D.* stay.

In order to justify a remedy that undoes a removal, a court would have to identify a problem with that removal. The district court expressly declined to do so. *See* R. Doc. 30, at 26 n.14. And any attempt to conceive of the alleged OSUP violation as invalidating the removal order would simply create new problems: Such a claim would be jurisdictionally barred by statute and would be in the teeth of the Supreme Court's *D.V.D.* stay orders.

*First*, if Plaintiff's OSUP claim presented an argument that his removal was invalid, that claim would be statutorily excluded from judicial review, under multiple provisions of 8 U.S.C. § 1252. Start with 8 U.S.C. § 1252(g). Congress has deprived district courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] *execute removal orders* against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in [§ 1252] and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title." Thus, unless authorized in § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021).

If Plaintiff attempts to conceive of his OSUP claim as a challenge to the lawfulness of his removal, in an effort to justify the remedy of reversing his removal, then it would be a challenge to the "execut[ion]" of his "removal order[]," and thus impermissible under § 1252(g). An

argument that Plaintiff's removal was invalid absent additional OSUP-related processes prior to the removal would mean that his challenge "falls squarely within" the INA's jurisdictional bar. *Reno v. AADC*, 525 U.S. 471, 487 (1999). Indeed, § 1252(g)'s prohibition is particularly pronounced here. Plaintiff's action plainly requests relief from the already-completed, lawful execution of his final order.

Courts of appeals have held that claims seeking a stay of removal outside § 1252(g)'s permissible avenues—even temporarily to assert other claims to relief—are barred by § 1252(g).[6] *See Hamama v. Adducci*, 912 F.3d 869, 874–77 (6th Cir. 2018) (vacating district court's injunction staying removal and concluding § 1252(g) barred district court from exercising jurisdiction over removal-based claims); *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision

---

[6] The First Circuit in *D.V.D.* adopted the opposite view, but that decision has been stayed by the Supreme Court, so whether it has any viability will depend on how the Supreme Court decides that case. *See also Bowrin v. INS*, 194 F.3d 483, 488 (4th Cir. 1999) (holding § 1252 does not bar legal challenges); *Ibarra-Perez,* 154 F.4th 989 (9th Cir. 2025) (same).

to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."). Section 1252(g) also applies to constitutional claims arising from the execution of a final order of removal, as the language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim[.]" *AADC*, 525 U.S. at 487; *accord Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017) (upholding jurisdictional bar against constitutional claims arising from execution of removal order because language of § 1252(g) bars "any cause or claim").

The Sixth Circuit's decision in *Hamama* and the Ninth Circuit's decision in *Rauda* are particularly relevant. In *Hamama,* a class of Iraqi nationals claimed ICE could not enforce their years-old removal orders without first providing them an opportunity to reopen their proceedings and make new fear-based clams. The Sixth Circuit held that "[u]nder a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to review." 912 F.3d at 874.

Similarly, in *Rauda*, the Ninth Circuit considered whether § 1252(g) barred the noncitizen's claim seeking to temporarily prevent his removal while he moved to reopen his removal proceedings raising "new developments" regarding his CAT claim. 55 F.4th at 776-77. Plaintiff claimed that the administrative procedures associated with his motion to reopen were constitutionally insufficient because they did not guarantee judicial review of these "new developments" prior to his removal. *Id.* He argued that § 1252(g) did not apply to ICE's allegedly unlawful decision to remove him now. *Id.* at 777. The Ninth Circuit held that § 1252(g) "does not include any temporal caveats" and barred plaintiff's claims.

So too here. If Plaintiff claims that his OSUP claim is a challenge to the lawfulness of his removal, then the district court lacks jurisdiction to challenge the execution of his removal. If he instead admits that a pre-removal OSUP violation does not affect the lawfulness of his removal, that merely proves the impermissible mismatch between the alleged violation and the remedies ordered by the district court to undo Plaintiff's removal and forbid his future removal.

Nor does this Court's carve-out for pure questions of law apply. *See Silva*, 866 F.3d at 941. The Court need look no further than the district court's order to understand that it did not involve a pure question of law but instead was highly fact-bound.

The district court spent pages outlining the court's own research on CAR country conditions. R. Doc. 30, at 11-14. It then used those facts to find that CAR is "an unstable country" with "corrupt and ineffective law enforcement" "where residents are at the mercy of armed criminal groups." R. Doc. 30, at 18. It found that "criminals frequently target foreigners for crimes of opportunity due to the perception that they are wealthy," that harassment of noncitizens is frequent, that threats to compel action are common, and that police services are "rudimentary at best." *Id.* at 19 (internet citations omitted). Further, the court found that international aid organizations are "subject to interruptions due to sudden flares of civil unrest" and that Plaintiff is "at risk of contracting potentially deadly diseases . . . and has no access to suitable medical care." *Id.* at 18. It further found that "[w]hile he remains in the Central African Republic, Lopez is a target for violent criminals." *Id.* at 20. As a result of its extra-record research, the court concluded that "Defendants'

current argument that Lopez . . . does *not* face any risk of concrete or imminent harm is plainly disingenuous." *Id.*

The district court's order makes clear that its order depended on numerous facts—specifically, what Defendants knew about CAR and what process should have been due under those circumstances. What is more, in denying Defendants' request for a stay, the district court characterized Plaintiff's removal as "wrongful" and seems to conclude such wrongfulness is uncontested. R. Doc. 42, at 14. Those are fact-bound determinations, which take this case outside the bounds of those that present a pure question of law. Accordingly, this case falls squarely under § 1252(g)'s jurisdictional bar.

In short, to the extent Plaintiff argues that his OSUP claims invalidate his removal, such a challenge to the "execution" of his final order of removal to a third country is barred by 8 U.S.C. § 1252(g).

*Second*, two other provisions of § 1252 work together to independently bar any OSUP-based challenges to the validity of Plaintiff's removal. To the extent "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien" are reviewable, that review must occur not in district courts, but in a petition

for review of a final order of removal, filed in a court of appeals. 8 U.S.C. § 1252(b)(9). Such a petition is the "sole and exclusive means for judicial review" of such claims. 8 U.S.C § 1252(a)(5). If Plaintiff seeks to challenge his removal as invalid because of improper OSUP revocation procedures, that would be a challenge to an "action taken" to remove him—namely, his removal itself. *Id.* § 1252(b)(9). That basic point distinguishes this case from cases involving claims only tangentially related to removal orders and thus not unreviewable under § 1252(a)(5) and (b)(9). *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion) (claims regarding detention); *DHS v. Regents*, 591 U.S. 1, 19 (2020) (claims regarding recission of DACA).

This Court should give effect to Congress's intent and the clear terms of the statute and stay the preliminary injunction. If Plaintiff's OSUP revocation claim was a challenge to the validity of his removal, then the district court lacked jurisdiction to entertain it.

## III. The Remaining Factors Favor a Stay

The remaining equitable factors plainly favor the government. The Supreme Court has repeatedly recognized the substantial equities favoring the government's ability to promptly effectuate third-country

removals, even when weighed against asserted harms of an entire class of individuals subject to third-country removals. By staying the class-wide relief in *D.V.D.*, the Supreme Court necessarily concluded that the balance of equities and public interest tipped in the government's favor. *D.V.D. III*; *see Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010).

The Supreme Court's decision to stay the *D.V.D.* preliminary injunction and class-wide judgment[7] must "inform how [lower courts] should exercise [their] equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). This is a like case: Plaintiff seeks relief from removal to a third country. He is a *D.V.D.* class member. And he asserts the same claims as are at issue in *D.V.D.* The district court did not consider those claims on the merits at this stage, but they remain before the district court as claims the district court must adjudicate before entering final judgment. *See* R. Doc. 30, at 26 n.14.

The government's harms resemble those it faced in *D.V.D.* The government argued the *D.V.D.* judgment caused "severe, irreparable harm to the government and the public interest." Application for Stay,

---

[7] The Supreme Court also stayed the final judgment of declaratory relief and vacatur in *D.V.D.*

26A406, at 5; *see also AFGE v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025); *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017). Finding third countries willing and able to accept aliens is a delicate diplomatic endeavor, and judicial intervention to prevent removal pursuant to those arrangements—let alone to demand that the government facilitate return of already-removed aliens—substantially and irreparably interferes with U.S. foreign policy. *D.V.D.* Application at 6. None of that is different here.

Indeed, the district court went *beyond* what the *D.V.D* district court ordered—that is, beyond the harms to the government that the Supreme Court found sufficiently grievous to merit a stay—by requiring Defendants to "facilitate" Plaintiff's return. When a noncitizen is removed to a foreign country and a district court compels the United States to seek his return, that itself impermissibly interjects the court into the United States' diplomatic discussions with a foreign sovereign nation. The district court has directed Department of State employees and U.S. Embassy agents to issue parole letters and to work with those embassy or consulate personnel to coordinate with DHS to "expeditiously facilitate" Plaintiff's return to the United States, all on an abbreviated

timeline. R. Doc. 30, at 28-29. The order also demands weekly reports and declarations—underscoring the district court's intent to compel the Executive to conduct foreign policy and superintend how it does so. *See id.* at 30. Indeed, the district court's disbelief of CAR's diplomatic assurances itself directly and irreparably injures delicate government relations.

On the other side of the balance, the harms Plaintiff asserts are inapposite to the claimed OSUP violation and are speculative at best. The district court lists a litany of maladies that could befall Plaintiff in CAR based on the court's own extra-record research. *See* R. Doc. 30 at 16. Moreover, those concerns arise from Plaintiff's *removal* to CAR, not from any failure to follow procedures governing revocation of OSUP. And those concerns do not rise to the level of persecution or torture. *See Ming Ming Wijono v. Gonzalez*, 439 F.3d 868, 872-74 (8th Cir. 2006) (defining "persecution" as "infliction or threat of death, torture, or injury to one's person or freedom, on account of a protected characteristic" and "torture" as "limited to extreme forms of cruel and inhuman treatment" (quotations omitted)); *Eusebio v. Ashcroft*, 361 F.3d 1088, 1090 (8th Cir. 2004) ("The Ninth Circuit has properly observed that persecution is an

extreme concept. Low-level intimidation and harassment does not rise to the level of persecution." (citations omitted)).

A preliminary injunction is supposed to preserve the status quo. Here, the status quo is that Plaintiff was removed months ago, in August 2026, pursuant to a final order of removal. But the district court's preliminary injunction disrupted the status quo by ordering Defendants to facilitate Plaintiff's return so that he can litigate *pre-removal* detention. Plaintiff can litigate his claims from CAR, and there is no reason to create a new status quo by returning him to the United States. For all these reasons, all the stay factors favor Defendants, and this Court should grant Defendant's request for a stay.

## CONCLUSION

Defendants ask this Court to grant an immediate administrative stay to maintain the status quo and prevent this motion from becoming moot. After full briefing on this motion, the Court should grant a stay pending appeal.

Dated: November 11, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

MATTHEW P. SEAMON
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

DANIEL N. ROSEN
United States Attorney

*s/ David W. Fuller*

BY: DAVID W. FULLER
Assistant U.S. Attorney
USAO-MN Civil Division Chief
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415

## **<u>Certificate of Compliance</u>**

The undersigned attorney for the United States certifies this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). The motion has 5,175 words proportionally spaced using Century Schoolbook, 14-point font. The motion was prepared using Word for Microsoft 365.

Dated: November 11, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

*s/ David W. Fuller*

BY: DAVID W. FULLER
Assistant U.S. Attorney
Civil Division Chief

## **Certificate of Service**

I hereby certify that on November 11, 2026, Defendants' Motion for a Stay Pending Appeal and Immediate Administrative Stay and Request for Expedited Relief was filed to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/David W. Fuller*